WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Braulio Trejo Martin,<br><br>Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>Respondents. | No. CV-17-2160-PHX-DLR (DKD)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE DOUGLAS L. RAYES, U.S. DISTRICT JUDGE:

Braulio Trejo Martin ("Martin" or "Petitioner") filed his federal habeas petition pursuant to 28 U.S.C. § 2254 ("Petition") on July 5, 2017, challenging his sentence entered by the Maricopa County Superior Court. (Doc. 1) For the reasons set forth below, the undersigned Magistrate Judge recommends that this Court deny and dismiss the Petition as untimely filed pursuant to 28 U.S.C. § 2244(d).

**I.    BACKGROUND**

    **A.    State Trial Court Proceedings**

Petitioner was indicted in July 2010 on eight counts arising from his conduct with his young granddaughter in 2008 and 2009. (Doc. 13-1 at 4-7) The indictment alleged: four counts of sexual conduct with a minor, a Class 2 felony; two counts of sexual abuse, a Class 3 felony; and two counts of molestation of a child. (*Id.*) Petitioner participated in two settlement conferences, one on November 17, 2010, and one on April 1, 2011, in which he was represented by counsel and assisted by a court interpreter. (*Id.* at 20-51,

65-80) The State advised Petitioner he would face a minimum sentence of 150 years' imprisonment if convicted on all eight counts. (*Id.* at 28) At the conclusion of the first two settlement conferences, Petitioner was undecided whether he wished to accept a plea offer. (*Id.* at 49-51, 79-80)

On April 20, 2011, the last day to accept a plea agreement, the superior court held a final trial management conference in anticipation of Petitioner's trial set for May 3, 2011. (*Id.* at 95-121) Petitioner still had not given a definitive answer on whether he wished to accept the offered plea agreement or not. (*Id.* at 97-98) Petitioner at first stated that he wished to retain a private attorney, and requested additional time to "look for one." (*Id.* at 98) The superior court advised Petitioner that he was free to retain an attorney and go to trial on May 3, or to take the offered plea agreement, which would expire that day. (*Id.* at 98-99) About the denial of a continuance for Petitioner to obtain a new attorney, the superior court judge stated, "We have discussed everything. We had discussions about whether you were going to get a different attorney at a different time, and I'm not going to delay this trial any longer." (*Id.* at 99) Petitioner's appointed counsel explained that he had negotiated a favorable plea offer with the State with a sentencing range between ten (10) and twenty-four (24) years. (*Id.* at 102) The superior court judge told Petitioner, "[T]oday is the last day that you can accept the plea. If you are confident that you want to go to trial, then that is fine. There's no pressure for you not to go to trial. But I just need to know because counsel need to be able to prepare and be ready to present this case, both from the State's side and the defense side of trial." (*Id.* at 100) Petitioner decided to take the plea agreement. (*Id.* at 103-120)

Petitioner signed the plea agreement, and initialed each of its enumerated terms. (*Id.* at 86-88) The Court conducted a standard and complete plea colloquy. (*Id.* at 103-120) Petitioner pleaded guilty to: Count 1 of the indictment, Molestation of a Child, a Class 2 felony; Count 6, Attempted Molestation of a Child, a Class 3 felony; and Count 7, Attempted Molestation of a Child, a Class 3 felony. (*Id.* at 86, 103-120) Each count to which Petitioner plead guilty was a dangerous crime against children. (*Id.*) The

actions underlying the counts occurred when the victim was 6, 7, and 8 years old, respectively. (*Id.*)

At Petitioner's sentencing hearing on June 2, 2011, the State argued a number of aggravating factors, including: the victim's young age; the victim's allegations of vaginal and anal penetration, and oral sex; the victim's allegation that Petitioner gave her some type of sedative or drug in committing the charged acts; the victim's suffering of emotional harm; and abuse by a person in a position of trust. (Doc. 13-2 at 16-17) The State recommended an aggravated sentence of 24 years. (*Id.* at 17)

Petitioner's counsel argued that Petitioner had accepted responsibility for his actions and had admitted to the police the actions on which his plea agreement was based. (*Id.* at 18) He further noted that Petitioner had no criminal record other than a misdemeanor DUI. (*Id.*) Petitioner's counsel reminded the court that Petitioner had been working and sending money to support his wife and children in Mexico. (Doc. 13-2 at 19) Additionally, defense counsel advised the court that Petitioner had been screened by the adult probation department and was assessed as lowest level sex offender, Level 1. (*Id.*) In light of Petitioner's age, 57 (*Id.* at 15), defense counsel noted that recidivism after the age of 65 was extremely low, and that upon release from custody, Petitioner was likely to be deported (*Id.* at 20). Petitioner's counsel requested imposition of a sentence of less than the presumptive term of 17 years. (*Id.*)

As aggravating factors, the judge discussed the very young age of the victim, that Petitioner had molested the victim over an extended period and had afforded Petitioner "plenty of time to reflect upon the wrongness of his conduct, yet he continued[,]" that Petitioner's actions had shattered a number of familial relationships, the resultant harm to the victim and her family, the nature of the molestations "that included penile/vaginal, penile/anal penetration[,]" and that Petitioner had not really accepted responsibility when he told the police the victim had been the aggressor. (*Id.* at 21) The judge found a single mitigating factor, that Petitioner had a minimal criminal history. (*Id.*)

The judge found the aggravating factors "far outweigh[ed]" the mitigating factors, and sentenced Petitioner to an aggravated sentence of 24 years' imprisonment, with credit for presentence incarceration of 336 days, and ordered him to register as a sex offender. (*Id.* at 21-22) The judge advised Petitioner he could seek review of the court's orders by filing a petition for post-conviction relief ("PCR") within 90 days, or else he would lose the right to seek such review. (*Id.* at 22) He also told Petitioner that if he did not have enough money to afford an attorney, or to obtain transcripts or other papers necessary to file a PCR, these would be "supplied to [him]." (*Id.* at 23)

### B. Appeal and PCR Proceedings

Petitioner did not appeal his conviction and sentence, which he could not do, in any event, because he was convicted by plea agreement.[1] Petitioner timely filed a notice of Post-Conviction Relief ("PCR") with the trial court on August 22, 2011, and requested an attorney. (*Id.* at 42-44) On April 30, 2012, his appointed counsel filed a Notice of Completion of Post-Conviction Review by Counsel (*Id.* at 50-51), averring he had reviewed the record and was unable to identify any claims for relief. (*Id.* at 50) He requested the court to allow Petitioner an extension of 45 days to enable Petitioner to file a *pro per* PCR petition. (*Id.* at 51) The trial court granted Petitioner 45 days from May 7, 2012 to file his *pro per* petition. (Doc. 13-2 at 53) On May 14, 2012, Petitioner's PCR counsel filed a notice of compliance and stated he had sent all of Petitioner's documents in counsel's possession to Petitioner. (*Id.* at 56-57) After Petitioner failed to file a *pro per* PCR petition, the superior court dismissed his PCR proceeding on August 2, 2012; the dismissal was electronically filed on August 3, 2012. (*Id.* at 59)

Almost two years later, on June 2, 2014 (signed on May 30, 2014), Petitioner filed with the superior court a request for extension of time to file his *pro per* PCR petition. (*Id.* at 61-63) Petitioner advised the court his appointed counsel had "withdrawn" from

---

[1] *See A.R.S. § 13–4033(B)*; *Summers v. Schriro*, 481 F.3d 710, 711-717 (9th Cir. 2007) (concluding that an "'of right proceeding,' available under Arizona Rule of Criminal Procedure 32 to criminal defendants who plead guilty or no contest, is a form of 'direct review' within the meaning of 28 U.S.C. § 2244(d)(1)")

- 4 -

his case on April 30, 2014.[2] (*Id.* at 61) Petitioner declared the he had spent "the last few weeks asking other inmates to review the record sent to him by former counsel in order to explain his case, discuss potential issues and to decide how best to pursue his [PCR action]." (*Id.* at 62) The superior court denied Petitioner's request because his prior PCR proceeding had been dismissed in August 2012, and Petitioner had no active PCR proceeding. (*Id.* at 65)

On August 5, 2014, Petitioner appears to have submitted to the superior court a motion to file a PCR petition *nunc pro tunc*, arguing that because the court's order giving him 45 days to file his PCR petition *pro per* was in English, as was his record, he was unable to comply with the June 2012, deadline to file a petition. (Doc. 15)

On August 13, 2014 (signed on August 5, 2014), Petitioner filed another notice of PCR with the superior court (*Id.* at 67-69), along with a Petition for PCR (*Id.* at 71-93) Petitioner stated he had not timely raised the issues in this petition because he "is an illiterate Spanish-speaking inmate whom had no assistance from the courts, counsel, the State or the [Arizona Department of Corrections]." (*Id.* at 74)

In the Petition for PCR, Petitioner argued the trial court violated his Fourteenth Amendment rights to due process and equal protection by using essential elements of his offenses to aggravate his sentence, and by failing to find these factors by a preponderance of the evidence. (*Id.* at 80-86) Next, Petitioner asserted that his trial counsel was ineffective when he: (1) failed to object to either the judge's use of elements of the offense for aggravation purposes, or to the absence of evidence establishing that the victim and her family suffered emotional harm (*Id.* at 87); and (2) did "very little" to present mitigation evidence at his sentencing, and failed to advise him he could have family and friends appear to speak on his behalf (*Id.* at 88). Petitioner also argued he received ineffective assistance of counsel by appellate counsel (PCR proceeding) because counsel: (1) failed to raise any colorable claim on Petitioner's

---

[2] Petitioner's appointed counsel had filed his notice of completion of PCR review on April 30, 2012, not 2014.

behalf; and (2) notified Petitioner in English that he had 45 days to file a *pro per* petition, when he was aware that Petitioner could not read or write English. (Doc. 13-2 at 89-90) Petitioner further argued that the U.S. Supreme Court's holding in *Martinez v. Ryan*, 566 U.S. 1 (2012) permitted a claim of ineffective assistance of counsel "during initial review collateral proceedings [to] overcome a procedural default[.]" (*Id.* at 80) Petitioner requested the superior court to appoint him counsel to supplement his claims and to hold an evidentiary hearing. (*Id.* at 90-91)

On September 7, 2014, the superior court denied Martin's PCR as "both untimely and successive." (Doc. 13-3 at 2-3) The court noted that *Martinez v. Ryan* "does not provide relief at the state court level." (*Id.* at 2) The court held that Petitioner's claims did not qualify under Arizona Rule of Criminal Procedure 32.4(a) for untimely filing, because they did not fall within the grounds for relief identified in Rule 32.1(d), (e), (f), (g), or (h). (*Id.* at 3) Accordingly, the court dismissed both Petitioner's notice of PCR and his associated petition for PCR. (*Id.*)

Martin petitioned for review to the Arizona Court of Appeals in October 2014. (*Id.* at 5-18) He explained that after he had filed his initial notice of PCR, after his appointed counsel had filed a notice of compliance, and the superior court had ordered him to file a *pro per* PCR petition within 45 days, he needed to have the court's order translated from English by another inmate. (*Id.* at 9) He complained that he did not understand what a *pro per* petition was, and did not realize that he could ask for help from a fellow inmate, and that his lack of understanding resulted in his failure to timely file his *pro per* petition and subsequent dismissal of his PCR action by the superior court. (*Id.*) Petitioner argued the trial court had erred in holding there is no Constitutional right to effective assistance of counsel in state post-conviction relief proceedings, and abused its discretion when it failed to address his motion to file his petition *nunc pro tunc*. (*Id.* at 10-11) Petitioner contended the superior court should have been "obligated to review the record for fundamental error after appointed counsel [withdrew] from [his] case, just as the appellate courts are required to do when appellate counsel files an *Anders* brief

- 6 -

pursuant to *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969)." (Doc. 13-3 at 13) Petitioner urged that due process considerations entitled him to an evidentiary hearing on his claim that the trial court committed fundamental error when aggravating his sentence. (*Id.* at 14) He further asserted that his trial and PCR counsel were ineffective for failure to object to his sentence on this ground. (*Id.* at 15)

The court of appeals granted review, but denied relief on January 12, 2017. (*Id.* at 20-21) The court explained:

> [Petitioner] could have raised the sentencing issues as well as the claims of ineffective assistance of trial counsel in his first post-conviction relief proceeding. He could have raised the claims of ineffective assistance of his first post-conviction counsel in a timely second petition for post-conviction relief in 2012. Any claim a defendant could have raised in an earlier post-conviction relief proceeding is precluded. Ariz. R. Crim. P. 32.2(a). None of the exceptions under Rule 32.2(b) apply.

(*Id.* at 21)

Martin then filed a petition for review with the Arizona Supreme Court. (*Id.* at 23-35) He requested review on the questions of: (1) whether the trial court erred by not accepting his request to file his PCR petition *nunc pro tunc*; and (2) whether the superior court is required to search the record for fundamental error after appointed PCR counsel has found no colorable claims to assert, because the PCR action serves as his "first, as-right, appeal[.]" (*Id.* at 24) Petitioner complained that the court of appeals failed to address his arguments involving the language barrier he faced in filing a *pro per* PCR petition, his petition *nunc pro tunc*, and a trial court's obligation to search the record for fundamental error in defendant's first [of]-right post-conviction proceeding. (*Id.* at 30)

On May 17, 2017, the Arizona Supreme Court denied the Petition for Review without comment. (*Id.* at 41) The Court of Appeals issued its mandate to the Maricopa County Superior Court on June 20, 2017. (*Id.* at 43)

**C. Petitioner's Habeas Claims**

Petitioner asserts five grounds in his Petition, which was filed with this Court on

July 5, 2017. (Doc. 1)[3] In Ground 1, he argues the state trial court violated his Fourteenth Amendment rights to due process and equal protection when the judge aggravated his sentence. (Doc. 1 at 6-12) Petitioner complains in Ground 2 that his trial counsel provided ineffective assistance of counsel at sentencing. (*Id.* at 13-14) In Ground 3, Petitioner similarly argues his appointed PCR counsel provided "ineffective assistance of counsel in violation of the 14th Amendment." (*Id.* at 15-17) Additionally, in Ground 3 Petitioner contends his claim overcomes procedural default under *Martinez v. Ryan*. (*Id.* at 17) Petitioner asserts in Ground 4 that the trial court violated his Fourteenth Amendment due process rights when it failed to accept his motion to file a PCR petition *nunc pro tunc*. (*Id.* at 18-22) In Ground 5, Petitioner asserts the state courts violated his Fourteenth Amendment rights to due process and equal protection by failing to search his record for fundamental error during his PCR action, including appellate court review. (*Id.* at 23-25)

Respondents contend that each of Petitioner's grounds for relief fails as untimely filed and also as either impliedly or expressly procedurally defaulted. (Doc. 13 at 13) Additionally, Respondents argue Ground 1 presents a state law issue that is not cognizable in federal habeas. (*Id.*)

## II. LEGAL ANALYSIS

### A. AEDPA Statute of Limitations

A threshold issue for the Court is whether the habeas petition is time-barred by the statute of limitations. The time-bar issue must be resolved before considering other procedural issues or the merits of any habeas claim. *See White v. Klitzkie*, 281 F.3d 920, 921–22 (9th Cir. 2002). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Petitioner's habeas petition because he filed it after April 24, 1996, the effective date of the AEDPA. *Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir. 2001) (citing *Smith v. Robbins*, 528 U.S. 259, 267 n.3 (2000)).

---

[3] Petitioner signed the Petition on June 19, 2017 (Doc. 1 at 27); *see* note 5, *infra*.

Under the AEDPA, a state prisoner seeking federal habeas relief from a state court conviction is required to file the petition within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). If a defendant is convicted pursuant to a guilty or no contest plea, then the first post-conviction proceeding is considered a form of direct review and the conviction becomes "final" for purposes of Section 2244(d)(1)(A) when the Rule 32 of right proceeding concludes. *Summers v. Schriro*, 481 F.3d 710, 711 (9th Cir. 2007) (conviction pursuant to plea agreement is final on expiration of the time for seeking Rule 32 relief).

Petitioner timely filed his notice of PCR in August 2011. (Doc. 13-2 at 42-44) After his appointed counsel notified the trial court that he was unable to identify colorable claims for relief, the court gave Petitioner 45 days from May 7, 2012, to file his *pro per* PCR petition, which deadline occurred on June 21, 2012. (*Id.* at 53) After the June 21, 2012, deadline had passed, and Petitioner had failed to file a *pro per* petition, the trial court dismissed his PCR proceeding on August 3, 2012. (*Id.* at 59) Pursuant to Arizona Rule of Criminal Procedure 32.9(c), Petitioner then had 30 days during which to file a petition for review to the Arizona Court of Appeals. Because Petitioner did not file such a petition, his state PCR action became final 30 days after August 3, 2012, which was September 2, 2012. Under 28 U.S.C. § 2244(d)(1)(A), AEDPA's 1-year limitations period ended on September 2, 2013. *See Summers v. Schriro*, 481 F.3d 710, 715-17 (9th Cir. 2007). Because Petitioner signed his Petition on June 19, 2017 (Doc. 1 at 27)[4], and it was filed with the Clerk of this Court on July 5, 2017 (Doc. 1 at 1), he missed filing

---

[4] Respondents calculate the filing date of Petitioner's pro se filings from the date on which he signed and delivered the document to prison authorities for filing. (Doc. 13 at 16 n.5); *see Houston v. Lack*, 487 U.S. 266, 270–74 (1988) (discussing mailbox rule in federal proceedings). Respondents assume Petitioner delivered his filings to prison authorities for mailing on the date he signed them, unless the filings indicate the mailing date. (*Id.*); *see Butler v. Long*, 752 F.3d 1177, 1178 n.1 (9th Cir. 2014) (assuming federal habeas petitioner "turned his petition over to prison authorities on the same day he signed it").

within the limitations period by nearly four years. Consequently, the Petition is untimely absent sufficient statutory or equitable tolling.

### B. Statutory Tolling

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). A state PCR petition not filed within the state's required time limit, however, is not "properly filed," and the petitioner is not entitled to statutory tolling during those proceedings. *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)."); *Allen v. Siebert*, 552 U.S. 3, 6 (2007) (finding that inmate's untimely state post–conviction petition was not "properly filed" under the AEDPA's tolling provision, and reiterating its holding in *Pace*, 544 U.S. at 414). Once the AEDPA limitations period expires, a subsequently filed state post-conviction proceeding cannot restart the statute of limitations. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (noting that the limitations period is not reinstated by applications for state post-conviction relief filed after expiration of the AEDPA statute of limitations). "A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled." *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000). Further, a second PCR proceeding that is deemed untimely does not toll the time between the first and second PCR proceedings. *Hemmerle v. Schriro*, 495 F.3d 1069, 1075 (9th Cir. 2007).

Petitioner filed a second Petition for PCR with the superior court on August 13, 2014 (Doc. 13-2 at 71-93), which was well after AEDPA's 1-year limitations period ended on September 2, 2013. Therefore, Petitioner's second PCR proceeding was not "properly filed." Accordingly, Petitioner is not entitled to statutory tolling.

## C. Equitable Tolling

In his reply, Petitioner argues the limitations period applicable to his Petition qualifies for equitable tolling because: he does not read, write or speak in English; does not read or write in Spanish; the Arizona Department of Corrections ("ADC") does not maintain Spanish language legal materials; ADC policy prohibits its paralegal employees from reading an inmate's record, identifying issues, or drafting pleadings for him; and further prohibits foreign national inmates from participating in "mandatory education which prevents them from overcoming any obstacles they face from being illiterate in a timely fashion." (Doc. 14 at 2; Doc. 1 at 18-19, 27)

Petitioner explains that in contrast with his experience in the trial court, where he was provided with an attorney and "everyone did everything for him and told him what they were doing[,]" on appeal "everything was dumped in his lap" and "he was expected to know what to do and [then] to do it." (Doc. 14 at 3) He contends that this expectation of an "illiterate Spanish speaking inmate" is completely unrealistic, and for this reason equitable tolling applies. (*Id.*) Petitioner explains that it was "natural" for him to gravitate toward other Spanish-speaking foreign nationals in prison, and that these inmates were not well-positioned to help him read the record or identify legal issues. (*Id.* at 4-5) Additionally, Petitioner states that ADC policy prevented staff from helping him locate bi-lingual inmates who could assist him. (*Id.* at 5) Petitioner further asserts that his trial attorney had advised him not to discuss his case with anyone else, and Petitioner mistakenly "took that advice with him to prison" and believed the advice applied particularly to ADC staff. (*Id.*) Finally, Petitioner argues that state policy has prevented him, as a "criminal alien," from enrolling in mandatory English language classes. (*Id.* at 6)

The U.S. Supreme Court has held "that § 2244(d) is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645, 130 S.Ct. 2549, 2560 (2010). The AEDPA limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar. *Id.* at 645–46. The Ninth Circuit Court of Appeals

"will permit equitable tolling of AEDPA's limitations period 'only if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time.'" *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (*quoting Calderon v. U.S. Dist. Ct.*, 163 F.3d 530, 541 (9th Cir. 1998) (en banc), *abrogated on other grounds by Woodford v. Garceau*, 538 U.S. 202 (2003) (citations omitted)). Put another way, for equitable tolling to apply, a petitioner must show "(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstances stood in his way" to prevent him from timely filing a federal habeas petition. *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Id.* at 653 (internal citations and quotations omitted). Whether to apply the doctrine of equitable tolling "'is highly fact-dependent,' and [the petitioner] 'bears the burden of showing that equitable tolling is appropriate.'" *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005) (internal citations omitted); *see also Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (stating that equitable tolling is "unavailable in most cases," and "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule") (citations and internal emphasis omitted).

A petitioner's *pro se* status, indigence, limited legal resources, ignorance of the law, or lack of representation during the applicable filing period do not constitute extraordinary circumstances justifying equitable tolling. *See, e.g., Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling."); *see also Ballesteros v. Schriro*, CIV-06-675-PHX-EHC (MEA), 2007 WL 666927, at *5 (D. Ariz. Feb. 26, 2007) (a petitioner's *pro se* status, ignorance of the law, lack of representation during the applicable filing period, and temporary incapacity do not constitute extraordinary circumstances). Further, an inmate's "proceeding *pro se* is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim." *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000).

In *Mendoza v. Carey*, the Ninth Circuit recognized that under some circumstances, "a non-English speaker who could not find a willing translator could qualify for equitable tolling." *Mendoza v. Carey*, 449 F.3d 1065, 1070 (9th Cir. 2006). The court concluded that a "non-English-speaking petitioner seeking equitable tolling must, at a minimum, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or other source." *Id.* The court declined to require that prisons provide legal materials in Spanish. *Id.* at n.5.

Here, Petitioner was able to file his notice of PCR with the superior court in August 2011, on the appropriate form, in English. (Doc. 13-2 at 42-44) After his appointed counsel filed a notice of completion of PCR review and also a notice of compliance averring he had sent Petitioner all documents from his case (*Id.* at 53-57), the superior court dismissed his PCR action on August 3, 2012 (*Id.* at 59). The time for Petitioner to file a petition for review of this dismissal with the Arizona Court of Appeals expired on September 2, 2012. The Petitioner next filed with the superior court, in June 2014, a request for extension of time to file a *pro per* petition for PCR (*Id.* at 61-63), by which time the AEDPA limitations period had already lapsed, as is discussed above.

While Petitioner asserts that his illiteracy in English and Spanish and his lack of legal knowledge prevented him from timely filing a *pro per* PCR petition, he has wholly failed to explain, let alone demonstrate, that prior to 2014, he diligently pursued his rights regarding either a timely *pro per* PCR petition or a federal habeas action. In his request for extension of time to file a *pro per* PCR petition, which Petitioner signed on May 30, 2014, he stated that he had "spent the past few weeks asking other inmates to review the record sent to him by former counsel in order to explain his case, discuss potential issues and to decide how best to pursue his [PCR action]." (Doc. 13-2 at 62) He has not asserted that, prior to 2014, he actually approached anyone, either prison staff or other inmates, for assistance in translating the superior court's notice of completion of PCR review, which advised him of his deadline for filing a *pro per* petition (Doc. 13-2 at 53-

54), or the court's order dismissing his PCR action (*Id.* at 59). Similarly, aside from his reported actions the few weeks prior to May 30, 2014, he does not claim he asked anyone, either prison staff or other inmates, about the process for inmates to file a *pro per* PCR petition, about appealing a dismissal of such a petition, about filing a federal habeas claim, or any other sort of legal assistance. In short, Petitioner has provided no basis for the Court to conclude that he pursued his rights diligently during the one-year AEDPA statute of limitations period between September 2, 2012 and September 2, 2013.

Petitioner complains that "ADC policy prohibited staff from helping inmates to investigate potential issues or from preparing petitions on their behalf," and further prohibits "foreign nationals" from participating in mandatory education in the English language. (Doc. 1 at 21, 27) Respondents note that Petitioner did not identify what specific "ADC policy" he believed would support his claim for equitable estoppel. (Doc. 13 at 19) Respondents cited sections of the ADC Department Order Manual, Chapter 900, Department Order 902, *Inmate Legal Access to the Courts*, including those recognizing an inmate's entitlement to obtain active assistance from the "Department from Paralegals" for claims involving habeas petitions and appeals from conviction, and allowing access to legal texts in the library. (*Id.*) In reply, Petitioner argues that all an ADC paralegal can do under the policy is "tell an inmate what forms he needs to fill out and where he needs to send them[,]" and asserts that, in addition, he needed help reading the record, identifying legal issues, and preparing pleadings. (Doc. 14 at 4) Significantly, Petitioner does not tell the Court how he had diligently pursued his rights, or how any ADC policy presented "extraordinary circumstances" preventing him from timely filing either a PCR petition or federal habeas petition. Moreover, the fact that Petitioner was able to find legal assistance with his 2011 and 2014 state filings is strong evidence that had Petitioner acted with diligence during the AEDPA limitations period, he could have timely filed his *pro per* PCR petition.

Petitioner cites *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), as authority for relief from AEDPA's one-year statute of limitations. (Doc. 1 at 17) However, the *Martinez*

decision has no application to the issue of timeliness of Petitioner's habeas petition. *Worrell v. Ryan*, No. CV-13-01683-PHX-PGR (MHB), 2015 WL 1951657, at *1 (D. Ariz. April 28, 2015) (citing *Arthur v. Thomas*, 739 F.3d 611, 630 (11th Cir. 2014) (stating that "the *Martinez* rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not apply to AEDPA's statute of limitations or the tolling of that period."); *Davis v. Ryan*, No. CV-13-02338-PHX-ROS, 2015 WL 327456, at *2 (D. Ariz. Jan. 23, 2015) (noting that the Supreme Court's decision in *Martinez v. Ryan*, while recognizing an equitable excuse for procedural default, does not provide a time-bar excuse because procedural default and compliance with the federal statute of limitations are two distinct inquiries.); *Owens v. Ryan*, No. CV-13-08228-PCT-JAT, 2014 WL 4722491, at *10 (D. Ariz. Sept. 23, 2014) ("*Martinez* has no application to the statute of limitations in the AEDPA which governs Petitioner's filing in federal court.")).

Petitioner bears the burden of proof on the existence of cause for equitable tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry*, 448 F.3d at 1153 ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate."). As noted, Petitioner must demonstrate both his own diligence and that any hardship caused by lack of access to materials was an extraordinary circumstance. *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1013 (9th Cir. 2009). Petitioner has not shown that despite his own diligence, a lack of access to legal resources resulted in the untimeliness of the Petition before the Court.

Petitioner has failed to meet his burden of showing extraordinary circumstances or reasonable diligence that would justify equitable tolling. Additionally, the record does not reveal any extraordinary circumstances that prevented Petitioner from filing a timely federal habeas corpus petition.

### D. § 2244(d)(1)(B) "State Impediment" Exception

Pursuant to section 2244(d)(1)(B), the AEDPA one-year limitation period may run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action[.]" 28 U.S.C. § 2244(d)(1)(B). Petitioner claims that ADC policy prohibiting foreign nationals from mandatory English language classes is a state-created impediment entitling him to relief regarding the limitations period. (Doc. 1 at 21-22) Section 2244(d)(1)(B) requires both a showing of a violation of the Constitution or laws of the United States, and that such a violation created an impediment to the filing of an application. The Ninth Circuit has instructed that a petitioner seeking to demonstrate delayed accrual on this basis must establish that the alleged impediment "altogether prevented him from presenting his claims in *any* form, to *any* court." *Ramirez v. Yates*, 571 F.3d 993, 1000–1001 (9th Cir. 2009). As in this case, *Ramirez*, involved alleged limitations on access to prison legal resources. *Id.* at 995. Petitioner clearly has not demonstrated that the alleged limitations on prison legal resources altogether prevented him from presenting his claims in *any* forum to *any* court, because, for example, he successfully filed a timely notice of state post-conviction petition in August 2011, and filed his untimely *pro per* PCR petition in August 2014. (Doc. 13-2 at 42-44, 71-93) Petitioner accordingly is not entitled to delayed accrual under § 2244(d)(1)(B).

### E. Actual Innocence Exception

If a district court finds that a federal habeas petition is untimely, the untimeliness may be excused in rare instances by an equitable exception to AEDPA's statute of limitations. In *McQuiggin v. Perkins,* 569 U.S. 383, 391-396 (2013), the Supreme Court held that the "actual innocence gateway" to federal habeas review that applies to procedural bars in *Schlup v. Delo*, 513 U.S. 298, 327 (1995), and *House v. Bell*, 547 U.S. 518 (2006), extends to petitions that are time-barred under AEDPA. However, Petitioner does not argue, let alone meet, this excuse for untimeliness of the Petition.

### III. CONCLUSION

Petitioner filed the pending Petition after expiration of the AEDPA statute of limitations, and statutory and equitable tolling do not render the petition timely. Accordingly, the Petition is untimely under 28 U.S.C. § 2244(d)(1). The Magistrate Judge recommends that the petition be denied and dismissed.

Assuming the recommendations herein are followed in the District Judge's judgment, the District Judge's decision will be on procedural grounds. Under the reasoning set forth herein, reasonable jurists would not find it debatable whether the District Court was correct in its procedural ruling. Accordingly, to the extent the Court adopts this Report and Recommendation as to the Petition, a certificate of appealability should be denied.

Accordingly,

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be denied and dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability be denied because dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. The parties shall have fourteen days within which to file responses to any objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a

waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 17th day of April, 2018.

_____
David K. Duncan
United States Magistrate Judge